UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

REBECCA STRONG, DARRELL LYNN
BYERS, MICHAEL A. YONALLY,
and DONALD L. PETERSON,

        Plaintiffs,

    v.

CITY OF EUGENE, OFFICER SHAWN
R. TROTTER (Badge #334),
SERGEANT WILLIAM SOLESBEE
(Badge #311), DETECTIVE DAVE
BURROUGHS, and JOHN DOES
#1-10,

        Defendants.

Case No. 6:14-cv-01709-AA
OPINION AND ORDER

AIKEN, Judge:

    Plaintiffs Rebecca Strong, Darrell Byers, Michael Yonally, and Donald Peterson filed suit under 42 U.S.C. § 1983 alleging unreasonable seizure and the use of excessive force in violation of the Fourth Amendment, violations of their rights to freedom of association under the First Amendment, and state law claims of battery, negligence, and conversion. Plaintiffs' claims arise from the execution of a search warrant in early 2013.

1    - OPINION AND ORDER

Defendants now move for summary judgment on plaintiffs' federal claims. In turn, plaintiffs move for partial summary judgment on the legality of the search warrant. For the reasons explained below, defendants' motion is granted. The court declines to exercise supplemental jurisdiction over plaintiffs' state law claims and dismisses this action.

## BACKGROUND

Plaintiffs' claims arise from the execution of a search warrant at 27259 6th Street, Junction City on January 11, 2013, by the Eugene Police Department's Special Weapons and Tactics unit (SWAT team).

In late 2012, Eugene Police Department employees, including Officer Shawn Trotter, were investigating stolen vehicle traffickers. Ofc. Trotter identified plaintiff Byers as a suspected trafficker in stolen motorcycles and parts in association with a motorcycle gang called the Free Souls. Ofc. Trotter also identified Byers' rural property in Junction City as a likely location to find evidence of such stolen property. Trotter Decl. ¶ 2, Ex. 1. Accordingly, Ofc. Trotter obtained a search warrant to search Byers' Junction City property and to seize an assembled motorcycle belonging to Byers, along with documents, photographs, electronic records, and "any other evidence of the crimes of Theft in the First Degree, and Trafficking in Vehicles with Destroyed or Altered VIN's or conspiracy to commit those crimes." Trotter Decl. Ex. 1 at 24.

Officer Trotter completed a Planned Operations Risk Matrix for service of the warrant and met with Lt. Solesbee to discuss whether the SWAT team should serve the warrant. Lt. Solesbee decided to utilize the SWAT team, because he expected officers to encounter people with significant criminal histories; the property included multiple buildings; Byers was associated with an "outlaw" motorcycle gang; and multiple firearms were suspected to be on the property. Solesbee Decl. ¶¶ 4-5. In particular, officers were concerned about Patrick Munson, the

son of plaintiff Strong. Munson had a history of suicide attempts and resistance against the police, neighbors reported he answered the door with a gun, he was reportedly armed with realistic-looking pellet guns in the past and armed with a knife during a prior arrest, and a Lane County Sheriff's Deputy had flagged the address for officer safety. Patrick's reported criminal history included arrests for menacing with a gun, strangulation, and assault. Trotter Decl. ¶ 3; Solesbee Decl. Ex. 3 at 8.

Lt. Solesbee assigned scouts to observe the property and note the presence of children, dogs, or any obstacles to approaching the house. Ultimately, Lt. Solesbee decided to utilize a technique known as surround and call-out. SWAT members would drive armored vehicles onto the property, surround the buildings, identify themselves as police officers with a warrant, and use a loudspeaker to instruct the occupants to come out of the house. Solesbee Decl. ¶¶ 9, 11.

On January 11, 2013, the SWAT team began execution of the search warrant at approximately 7:02 a.m. Burroughs and Trotter were not present when the SWAT team initially served the search warrant. Solesbee Decl. ¶ 15; Trotter Decl. ¶ 4; Burroughs Decl. ¶ 3.

Byers, Strong, and Raymond Munson were at the property. Raymond Munson walked outside first and was placed in handcuffs and moved to the back of an SUV. Byers and Strong both dressed, walked outside through the front door, and were placed in handcuffs. Miller Decl. Ex. 1 at 26, 28-29 (First Byers Dep.); Miller Decl. Ex. 2 at 54-58 (Munson Dep.); Miller Decl. Ex. 3 at 34-37 (Strong Dep.).

Strong alleges that a SWAT team member ignored her stated preexisting shoulder problem and injured her while placing her in handcuffs. She then was placed in "double" handcuffs, which apparently were more comfortable. Strong Dep. at 36-41. Lt. Solesbee, Det.

3   - OPINION AND ORDER

Burroughs, and Ofc. Trotter never touched Strong or handcuffed her. Solesbee Decl. ¶ 17; Trotter Decl. ¶ 4; Burroughs Decl. ¶ 3.

Eventually, Byers, Strong and Raymond Munson were moved off-site while the SWAT searched the property and buildings. During this time, officers adjusted their handcuffs upon their request and allowed them to move outside the van to smoke. First Byers Dep. at 31-33.

After approximately 20-30 minutes, officers brought Byers, Strong, and Raymond Munson back to the home. Eventually, they were taken into the living room, where Ofc. Trotter read them the search warrant and asked questions. Munson Dep. at 63-65; Strong Dep. at 44-45, 47-48; First Byers Dep. at 35-38, 41-43. Strong's handcuffs were removed and Byers' handcuffs were moved to the front. Strong, Byers, and Raymond Munson were allowed to go out on the porch to smoke cigarettes and drink coffee. Byers was later released from handcuffs. First Byers Dep. at 41-42. Pursuant to the search warrant, Ofc. Trotter seized one motorcycle belonging to Byers and one belonging to Strong. Strong Dep. at 61.

Byers agreed to go to his shop to locate some paperwork. Byers drove to the shop, opened it, and allowed officers to look around. First Byers Dep. at 27, 47-48. Ofc. Trotter identified several engines he believed contained altered identification numbers, though he did not attempt to seize them at that time. Miller Decl. Ex. 4 at 20-23 (Second Byers Dep.); Trotter Decl. Ex 1 at 10-11.

Trotter issued Byers a citation for Theft in the First Degree and Trafficking in Vehicles with Destroyed or Altered Vehicle Identification Numbers. According to defendants, the Lane County District Attorney's Office declined to prosecute, and the City Prosecutor lacked venue over Byers and Strong. As a result, no charges were filed against them for their possession of stolen or altered property.

4    - OPINION AND ORDER

On February 22, 2013, Ofc. Trotter returned to Byers' shop to question Byers about the altered engines and an unserialized transmission. According to Byers, Trotter stated that Byers could go to jail if he did not consent to the release of those items. Byers signed a release and helped load the engines into Trotter's vehicle. The engines belonged to plaintiffs Petersen and Yonally. Second Byers Dep. at 25-27, 30-32; Trotter Decl. ¶¶ 16, 17, Ex. 2.

Byers later filed a motion against the City for return of the engines, transmission, and assembled motorcycle. The court denied Byers' motion, and judgment was entered in favor of the City. Miller Decl. Exs. 5-7.

The City Prosecutor decided not to pursue charges against Petersen or Yonally for the altered engines, and the City returned the engines to Petersen and Yonally with instructions to reserialize the engines. Trotter Decl. ¶¶ 19-21.

On March 13, 2013, the City returned Strong's motorcycle to her. Trotter Decl. ¶ 18. In November 2013, Byers' motorcycle was returned after he agreed to dismantle its stolen engine cases and return them to their rightful owner, Mutual of Enumclaw. *Id.* ¶ 22; Miller Decl. Ex 8.

Raymond Munson later brought a state lawsuit alleging claims for assault, battery, false arrest, negligence, and excessive force against the City and Ofc. Trotter. Defendants prevailed on summary judgment. Miller Decl. Exs. 10-15.

On October 28, 2014, plaintiffs filed suit in federal court.

## DISCUSSION

A.    Excessive Force Claims

In their First Claim for Relief, Byers and Strong allege excessive force and unlawful seizure against the individual defendants. Det. Burroughs and Ofc. Trotter move for summary judgment on grounds that they were not involved in the alleged constitutional violations. Each

defendant maintains that he played no role in the decision to employ the SWAT team and did not aim weapons at or initially handcuff Byers or Strong.

In response, plaintiffs contend that material issues of fact preclude summary judgment. However, plaintiffs point to no specific facts to support their argument. They do not explain what specific actions of Det. Burroughs and Ofc. Trotter constitute participation in the alleged constitutional violations, aside from arriving at the scene and "standing by." *See* Pls.' Response at 6. "However, the 'integral participant' doctrine does not implicate government agents who are 'mere bystanders.'" *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011).

Plaintiffs also contend that *Boyd v. Benton Cnty*, 374 F.3d 773 (9th Cir. 2004) supports their claims. However, in that case the Ninth Circuit held that the integral participation of officers remained an issue of fact where the officers provided armed backup during execution of a search warrant with a flash bang device. *Id.* at 780. Here, it is undisputed that Det. Burroughs merely assisted the search warrant affiant and did not participate in the execution of the search warrant. While Ofc. Trotter was the search warrant affiant, he did not make the decision to employ SWAT and did not arrive on the scene until the warrant was executed. Thus, I do not find either defendant to be an "integral participant" in the alleged use of excessive force.

Lt. Solesbee also moves for summary judgment on grounds that he committed no actions to constitute excessive force. I agree. While Lt. Solesbee authorized use of the SWAT team to execute the search warrant, plaintiffs do not challenge the information relied upon by Lt. Solesbee when he decided how to execute the warrant. To the contrary, Byers identified no incorrect or inaccurate facts in Trotter's search warrant affidavit. First Byers Dep. at 21-22. In their response to defendants' motion, plaintiffs argue only that Lt. Solesbee's decision to use the SWAT team "is sufficient to present an excessive force claim for the jury." Pls.' Response at 6.

Again, plaintiffs make no argument that the facts known to Lt. Solesbee were false or inaccurate, nor could they in light of Byers' deposition testimony. Given the location of the property, the number of buildings, and the concerns about Patrick Munson and firearms, I do not find that Lt. Solesbee's decision to utilize the SWAT team, in and of itself, constitutes excessive force. Notably, the SWAT team did not execute the search warrant in the middle of the night, they did not break windows or doors, and they did not deploy flash bang devices. Rather, the SWAT team members identified themselves and called for plaintiffs to exit the house.

In their Second Claim for Relief, Strong and Byers also assert an excessive force claim against the City of Eugene. However, plaintiffs fail to establish individual liability under § 1983 for excessive force; thus, they cannot establish that a policy or practice of the City caused such constitutional violation. *Bravo*, 665 F.3d at 1091. Regardless, plaintiffs fail to establish the existence of a municipal policy or the final decision of a policymaker. Rather, plaintiffs argue that the City unlawfully grants officers "unfettered discretion" to employ the SWAT team, and that the City "ratified" the decision to use excessive force. Pls.' Response at 12-13. As noted by defendants, plaintiffs offer no evidence to support their arguments. Plaintiffs do not identify which final policymaker of the City ratified which particular decision made by which subordinate. Rather, plaintiffs simply offer unsupported conclusions without a scintilla of evidentiary support. Therefore, summary judgment in favor of the City is appropriate.

B.    Unlawful Seizure Claims

In their Third and Fourth Claims for Relief, Strong and Byers allege unlawful seizure of their persons and motorcycles and damage to their property during the execution of the search warrant. However, it is well established that law enforcement officers are authorized to detain persons incident to the execution of a search warrant. *Muehler v. Mena*, 544 U.S. 93, 98 (2005).

In challenging the seizure of their motorcycles, Strong and Byers argue for the first time in their motion for partial summary judgment that Trotter and Burroughs committed judicial deception when preparing the affidavit for search warrant. First, plaintiffs did not raise this issue in their Complaint or any time during the litigation prior to their motion. Second, Byers did not raise judicial deception in his motion against the City for return of the motorcycles and parts, and this claim is arguably precluded. Third, plaintiffs fail to present evidence of a deliberate falsehood or reckless disregard for the truth on the part of Trotter or Burroughs when preparing the search warrant affidavit. The evidence cited by plaintiffs was either included in the warrant or was immaterial to the finding of probable cause. *See Liston v. Cnty. of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997) (to establish judicial deception, a plaintiff "must 1) make a 'substantial showing' of deliberate falsehood or reckless disregard for the truth and 2) establish that, but for the dishonesty, the challenged action would not have occurred"). In particular, the search warrant affidavit references "[Special Agent] Gromer's attached report," though plaintiffs dispute that the report was attached. Dugan Decl. Ex. A at 3 (doc. 63-1). Regardless, Gromer's report does not include "exonerating" evidence; it describes an investigation that was terminated due to lack of evidence, similar to the 2012 investigation plaintiffs cite. Dugan Decl. Ex. B (doc. 63-2). I further find no material falsity in the affidavit's references to prior investigations concerning the motorcycle or to Byers' association with a motorcycle gang. Therefore, the search warrant was valid and authorized seizure of the motorcycles.

Further, plaintiffs fail to present any evidence that the destruction of property during the search was excessive or unreasonable. Officers did not use flash bang devices or a battering ram, and they did not break doors or windows. Aside from the property's front gate, through which defendants concede they drove, plaintiffs identify no specific property damage. Under the

circumstances and the facts known to Lt. Solesbee – facts which are undisputed – the destruction of the gate was not unreasonable so as to support liability under the Fourth Amendment. *Liston*, 120 F.3d at 979 ("officers executing a search warrant occasionally 'must damage property in order to perform their duty'") (citation omitted); *cf. United States v. Ankeny*, 502 F.3d 829, 836-37 (9th Cir. 2007) (finding reasonableness of a search a "close call" when officers caused extensive property damage with flash bang devices, a battering ram, and rubber bullets).

Plaintiffs Yonally and Peterson also contest the seizure of their property from Byers' shop. However, Byers consented to the seizure of the engines and had common or apparent authority to do so. *United States v. Matlock*, 415 U.S. 164, 170 (1974) (a person with common authority may validly consent to search or seizure of property); *United States v. Ruiz*, 428 F.3d 877, 880-81 (9th Cir. 2005) (discussing apparent authority). The officers were cordial and non-threatening, and Byers signed a release, provided a hand truck, and helped load the engines into Ofc. Trotter's vehicle. Second Byers Depo. at 25-27. Though Byers alleges that he was told he could be arrested if he did not sign the release, he did not testify that he felt threatened or otherwise would not have cooperated with the officers. *Id.* at 30-32.

C.   Freedom of Association Claim

Finally, in their Eighth Claim for Relief, plaintiffs argue that Byers was targeted because of his association with the Free Souls motorcycle gang, in violation of his freedom of association rights under the First Amendment. As defendants point out, Byers' association with the Free Souls motorcycle gang implicates neither the right of intimate association nor the right of expressive association protected by the First Amendment. *City of Dallas v. Stanglin*, 490 U.S. 19, 24-25 (1989); *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984); *Conti v. City of Fremont*, 919 F.2d 1385, 1388-89 (9th Cir. 1990).

## CONCLUSION

Defendants' Motion for Partial Summary Judgment (doc. 54) is GRANTED, and plaintiffs' federal claims are DISMISSED. Plaintiffs' Motion for Partial Summary Judgment (doc. 61) is DENIED. The court declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). This action is DISMISSED.

IT IS SO ORDERED.

Dated this 25 day of May 2016.

                                        Ann Aiken
                             United States District Judge